# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RICHARD ZELMA, MARTIN PASCO,**
**and AGV SPORTS GROUP, INC.,**

                 **Plaintiffs,**

-vs-                                        **Case No.  6:10-cv-357-Orl-31KRS**

**DON WILLIAMS, JEFF REPEDE,**
**KATHLEEN PAGANELLI, PHILLIP**
**BROUSSEAU, GERARD D. ANDREWS,**
**and ABSOLUTE RESERVATIONS**
**CENTER, INC.,**

                 **Defendants.**

_____

# ORDER

      This matter comes before the Court without oral argument on cross motions for summary

judgment:  Defendants' Motion for Summary Judgment (Doc. 113);[1] Supplemental Motion for

Summary Judgment (Doc. 121),[2] the Response (Doc. 143)[3] and the Reply (Doc. 145); Plaintiffs'

---

    [1] Filed by Defendants Kathleen Paganelli ("Pagenelli") and Absolute Reservations Center, Inc. ("ARC"), and adopted by motion (Doc. 120) by Defendants Don Williams ("Williams") and Jeff Repede ("Repede").

    [2] Filed by Defendants Williams, Repede, and Paganelli.

    [3] Filed by Plaintiffs Richard Zelma ("Zelma") and Martin Pasco ("Pasco").

Motion for Summary Judgment (Doc. 123),[4] and the Responses (Docs. 141, 142),[5] Plaintiffs have not filed a reply.

## I. Overview

Plaintiffs brought suit on March 8, 2010 alleging, *inter alia*, that Defendants sent unsolicited facsimile advertisements to Plaintiffs in violation of Telephone Consumer Protection Act (the "federal TCPA" or "TCPA")[6] and the Maryland Telephone Consumer Protection Act (the "Maryland TCPA" or "MDTCPA").[7] Specifically, Count I asserts a claim on behalf of all Plaintiffs for violations of the TCPA. (Doc. 1, ¶¶ 95-102 and 107). Count II asserts a "claim" for injunctive relief on behalf of all Plaintiffs pursuant to the TCPA. (Doc. 1, ¶¶ 103-105 and 108).[8] Lastly, Count III asserts a claim on behalf of Plaintiffs Pasco and AGV Sports Group, Inc., only, for violations of the MDTCPA. (Doc. 1, ¶¶ 106 and 109).[9] Plaintiffs and Defendants now move for summary judgment on all counts pursuant to Federal Rule of Civil Procedure 56.

---

[4] Filed by Plaintiffs Zelma and Pasco and adopted by motion (Doc. 124) by Plaintiff AGV Sports Group, Inc. ("AGV").

[5] Filed by Paganelli and ARC.

[6] 47 U.S.C. § 227

[7] MD. CODE ANN., COM. LAW §§ 14-3201-3202.

[8] As this Court observed in a previous order (Doc. 17), an injunction is not a cause of action, but a remedy.

[9] Plaintiff Zelma, a New Jersey Resident, has not asserted a claim pursuant to the Maryland TCPA.

## II. Background

Unless otherwise noted, the following facts are undisputed.  In January of 2005, Plaintiffs began receiving unsolicited facsimile advertisements.[10]  Although the specific content varied, many of the documents advertised discounted cruises or trips to Orlando and other destinations.[11]  Combined, Plaintiffs have received more than two-hundred such advertisements between 2005 and 2007.[12]  One of the Plaintiffs, Richard Zelma ("Zelma"), is familiar with TCPA, having been involved in approximately one-hundred suits brought under the statute.  In an effort to determine the identity of the senders, he called the various phone numbers listed on the ads and came up with the names of a multitude of companies and individuals, including: Wholesale Connection Co., and its president Don Williams; Absolute Reservations Center, Inc., and its officers Kathleen Paganelli and John Repede; Silvertide Investments, its president Jeff Repede and vice president Don Williams; Velocity Wholesale, Inc., its president Gerard Andrews and secretary Phillip Brousseau.[13]  Plaintiffs allege that these companies and individuals were acting together to solicit and sell vacation packages.

The specific process by which the vacation packages were sold, how (and by whom) they were solicited, and the exact relationship between the Defendants is disputed.  What is clear is that

---

[10] Each Plaintiff began receiving the ads at different times, but generally speaking, the period in question is between January 2005 and December 2007.

[11] To purchase the package a customer was directed to call a toll-free number listed on the ad. In addition, many of the ads included a separate number that one could call to be removed from the solicitation list.

[12] The parties dispute the actual number of alleged unsolicited ads that the Plaintiffs received.

[13] All of individual principles of these companies are named as defendants in this lawsuit except for John Repede.  Plaintiffs did not name all of the companies because it appears that most, if not all, are out of business.

Wholesale Connection Company ("WCC")[14] and its affiliate Silvertide Investments ("Silvertide"),[15] "bundled together"[16] vacation packages, then entered into "certain contracts" with "independent contractors" for solicitation and sale of the packages.  (Doc. 114 at 6; Doc. 113 at 4).  Apparently, one of these "independent contractors" is Velocity Wholesale ("Velocity").  According to Defendants, the contracts specified that the agents would "use legal means only to reach out to prospective customers." (Doc. 113 at 4).  Other than the formation of these contracts, Defendants claim WCC and Silvertide had no involvement in solicitation.  (Doc. 113 at 3).  Once the packages were solicited and sold by the independent contractors, Absolute Reservations Center ("ARC")[17] "fulfilled" the packages after being contacted by a customer.  In her deposition, Paganelli describes "fulfillment" as, "[b]ook[ing] travel for clients."  (Doc. 118, Ex. 1, 18:15).  Despite admitting that "certain contracts" for solicitation were entered into, Defendants claim to have "no idea what individuals or entities sent these unsolicited faxes."  (Doc. 113 at 4).  In contrast, Plaintiffs allege that the Defendants were running a "common enterprise" to market and sell vacation packages through "overlapping companies."  (Doc. 123, Ex. 1, ¶ 5).  They allege that all the faxes came from a Canadian company called Protus IP Solutions, Inc.,

---

[14] WCC was an original Defendant in this suit, but was dismissed for failure to prosecute. (Doc. 58).  Its corporate officer, Don Williams, remains a defendant in this action.

[15] The Court notes that Williams was at various times, both the president of WCC and the vice president of Silvertide.  Jeff Repede was at various times, the president of Silvertide, and is the brother of John Repede, corporate officer of ARC.  (*See* Doc. 127, Ex. 5).

[16] Essentially, this refers to packaging hotel stays, cruises, and other activities into a single vacation.

[17] ARC is the only business entity named in this action.  ARC's corporate officer, Kathleen Paganelli, is also named as a defendant.

("Protus") and that Protus was hired by Defendants.  Further, it is undisputed that the unsolicited fax

ads sent by Protus advertised the Defendants' vacation packages.

Defendants argue that the Court should grant summary judgment in their favor because: (1)

Williams, Paganelli, and Repede cannot be held liable in their individual capacity; and (2) there is no

evidence to tie any of the Defendants to the unsolicited faxes.  In their Motion, Plaintiffs argue the

Court should grant summary judgment in their favor because the close relationship between the

companies demonstrates sufficient connection to hold them liable under the statute.  For the reasons

discussed *infra*, the Court will deny summary judgment for all parties.

## III. Standards

### A. Summary Judgment

A party is entitled to summary judgment when it can show that there is no genuine issue as to

any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th

Cir. 1994).  Which facts are material depends on the substantive law applicable to the case.  *Anderson

v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that

no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark

v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*,

252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003).  In determining whether the moving party has

satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most

favorable to the party opposing the motion, and resolves all reasonable doubts against the moving

party.  *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving

party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted).  Thereafter,

summary judgment is mandated against the non-moving party who fails to make a showing sufficient

to establish a genuine issue of fact for trial.  *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352.  The

party opposing a motion for summary judgment must rely on more than conclusory statements or

allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)

("conclusory allegations without specific supporting facts have no probative value") (citations

omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

When faced with cross motions for summary judgment a court must consider each motion on

its own merits.  *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983). Where both parties

"disagree as to the facts and take inconsistent legal theories the mere filing of cross motions for

summary judgment does not warrant the entry of such judgment."  *Id.*

### B. Telephone Consumer Protection Act

47 U.S.C. § 227(b)(1)(C) provides, in relevant part, that it shall be unlawful "to use any

telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an

unsolicited advertisement . . . ."  Subsection (b)(3) provides for enforcement through a private right

of action in state court, "if permitted by the laws or rules of a State."  Federal courts do not have

federal question jurisdiction under 28.U.S.C. § 1331 over a private suit brought under the TCPA.

*Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir. 1998).  However, in a previous

order, this Court held that it could accept jurisdiction under 28.U.S.C. § 1332.  (Doc. 14).

The regulations implementing the TCPA, 47 C.F.R. § 64.1200(a)(3), prohibit the use of a "telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." Subsection (f)(8) defines a "sender" as "the person or entity on whose behalf an unsolicited facsimile advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." The Eleventh Circuit has noted that the TCPA "is essentially a strict liability statute," in that it "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 775-76 (11th Cir. 2011) (citing *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (stating "[n]umerous courts have determined that the TCPA does not require intent, except when awarding treble damages")); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 893 n.3 (8th Cir. 2005) (noting that "[t]he Act makes no exception for senders who mistakenly believe that the recipients' permission or invitation existed." Intent is only relevant in determining whether treble damages should be awarded.). The only exception to liability under the statute is (1) when the sender has an "established business relationship" with the recipient, (2) the sender obtained the fax number through prior consent or because it was voluntarily made available for "public distribution," and (3) the ad contains a notice informing the recipient of the right to "opt out" of future advertisements.[18] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3)(iii).[19]

---

[18] There is no evidence to suggest, and Defendants do not assert, that this exception applies here.

[19] The Court notes that this single exception has been erroneously interpreted as three independent exceptions. *See, e.g., Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.*, 23 A.3d 469 (N.J. Super. Ct. App. Div. 2011) (listing three exceptions separated by the conjunction 'or' rather than 'and').

The federal TCPA provides that a private plaintiff may recover actual monetary loss or "receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). It further provides that, "if the court finds that the defendant willfully or knowingly violated this subsection, or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3). The Maryland TCPA is not a separate cause of action. MD. CODE ANN., COM. LAW § 14-3201 (providing, in relevant part, that a person may not violate "the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission . . . ."); *Worsham v. Ehrlich*, 957 A.2d 161, 172 (Md. Ct. Spec. App. 2008) (noting that "it is likely that the General Assembly enacted the MDTCPA merely to enable a private right of action under the TCPA, not to create new causes of action"). However, the MDTCPA does provide a different remedial scheme than its federal counterpart. It allows for the recovery of attorney's fees, but does not provide for treble damages in the case of willful violations. MD. CODE ANN., COM. LAW § 14-3202.

## III. Discussion

### A. Choice of Law

A federal court sitting in diversity is bound to apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011). In diversity cases involving conflicts of law, the law of the forum state governs. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Reliable Tractor, Inc. v. John Deere Const. & Forestry Co.*, 376 Fed. App'x 938, 941 (11th Cir. 2010). To resolve a conflict of law, Florida applies the "most significant relationship test" outlined in the Restatement (Second) of

Conflict of Laws.  *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240

(11th Cir. 2007).  First, a court must characterize the legal issue and determine whether it sounds in

torts, contracts, property law, etc.  *Id.*  Courts have reasoned that violations of TCPA are in the nature

of a tort.  *See J2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, 2009 WL 4572726 at *7 (N.D. Cal. Dec.

1, 2009);  *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 845-46 (Md. Ct. Spec. App.

2006).  Principles applicable to tort actions are listed in Section 145 of the Restatement (Second) of

Conflicts:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the
> local law of the state which, with respect to that issue, has the most significant relationship to
> the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law
> applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicile, residence, nationality, place of incorporation and place of business
> > of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the
> particular issue.

Restatement (Second) of Conflicts of Law §145 (1971).  Further, section 145(2) comment (f) states:

> In situations involving the multistate publication of matter that injures the plaintiff's
> reputation, or causes him financial injury, or invades his right of privacy, the place of the
> plaintiff's domicile, or on occasion, his principle place of business, is the single most
> important contact for determining the state of the applicable law.

Restatement (Second) of Conflicts of Law §145(2), cmt. f (1971); *see also Grupo Televisa*, 485 F.3d

at 1240-41.  Accordingly, the Court finds that the law of the Plaintiffs' domicile applies in this case.[20]

---

[20] New Jersey law applies to the claims of Plaintiff Zelma, while Maryland law applies to the
claims of Plaintiffs Pasco and AGV Sports.

Both Maryland and New Jersey provide a cause of action under the federal TCPA. Md. Code Ann., Com. Law § 14-3201; *Zelma v. Market U.S.A.*, 778 A.2d 591 (N.J. Super. Ct. App. Div. 2001).[21]

### B. Defendants' Motions for Summary Judgment

Only a person or entity that "sends" an unsolicited fax is liable under the TCPA. This includes the "sender," the entity on whose behalf the ads are sent, and a "fax broadcaster" that "demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200. The FCC has explained, and courts have noted, that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *Portuguese Am. Leadership Council of the U.S., Inc. v. Investors' Alert, Inc.*, 956 A.2d 671, 680-81 (D.D.C. 2008); *see also In the Matter of Rules and Regs. Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014 (2003). Although Defendants rely on many of the same arguments, the Court will divide the discussion into two parts. The first will discuss the claims against ARC, while the second will discuss the claims against Williams, Paganelli, and Repede in their individual capacities.[22]

### 1. ARC

As a preliminary matter, it is undisputed that the faxes in question advertised vacation packages that were "bundled" by WCC and Silvertide, and "fulfilled" by ARC. ARC disputes the allegation that the faxes were sent "on its behalf" because it did not actually sell anything, nor did it

---

[21] Florida allows for an action under the TCPA as well. *Condon v. Office Depot, Inc.*, 855 So.2d 644 (Fla. 2d DCA 2003).

[22] The Court notes that two of the Defendants, Phillip Brousseau and Gerard Andrews, have not responded to the Complaint or otherwise appeared in this case.

enter into any solicitation contracts. Rather, ARC contends that it only "received telephone calls from customers *who had already purchased vacation packages*," that were actually "sold" by an independent contractor of WCC or Silvertide (e.g. Velocity). (Doc. 141 at 3) (emphasis in original). In making this argument, ARC attempts to obfuscate the process by which the vacation packages were sold by claiming that "fulfillment" is somehow different in kind.[23]  However, the TCPA does not limit liability to only the direct "seller" of a product. It is intended to reach every person or entity whose services are advertised.   A reasonable jury could find that the ads were sent on ARC's "behalf" because the "fulfillment" of a vacation package is arguably part of the overall service solicited by the faxes in this case. There are at least two reasons for this: (1) the solicited vacation packages appear to have been useless until they were fulfilled;[24] and (2) ARC, WCC, and Silvertide all appear to have been acting together to fulfill a common commercial purpose–the sale of vacation packages.[25]

---

[23] Despite claiming ARC did not sell the packages to customers, Paganelli admits that it would sell "upgrades" and "extra nights" to customers. (Doc. 118-1, 34:2 - 35:6).

[24] Neither party clearly demonstrates that this was the case. However, upon reviewing the documents in this case in a light most favorable to Plaintiffs, it appears that the "independent agents" would sell what amounted to vouchers redeemable only through ARC.

[25] Plaintiffs provide the following evidence of this relationship: Bank statements from the three companies showing hundreds of thousands of dollars in transactions, evidence showing that the companies shared offices (*See* Doc. 123-1, ¶ 28), that officers and employees overlapped, that they shared rent (Doc. 123-1, ¶ 29), there appears to have been no formal contract between Silvertide and ARC despite the large amount of business between the two, (Doc. 119- 3, 199:20-23), and finally, it is unclear whether ARC provided its services to any other company. (Doc. 118-1, 36:6 - 38:1; Doc. 114, ¶ 62 (stating that "ARC's customers came completely, or virtually completely, from John Repede or a company he exercised control over.").

Next, ARC argues that the TCPA is not a strict liability statute.[26] Therefore, it cannot be liable absent some evidence of wrongdoing. Specifically, ARC asserts,

> To suggest that the FCC, or any other Federal court has determined that in arguably similar circumstances any party akin to these defendants is to be held *strictly liable* for the purported wrongdoing of others when there is no evidence of complicity, scienter or involvement with the wrongdoer is plain wrong.

(Doc. 141, at 3) (emphasis in original). Beyond claiming is it "plain wrong," ARC provides no basis for this assertion. The TCPA does include a scienter requirement, but in only two situations, (1) where a party seeks to impose liability on a "fax broadcaster," 47 C.F.R. § 64.1200, or (2) where a party seeks the imposition of treble damages. 47 U.S.C. § 227(b)(3). ARC presents no compelling reason why the Court should read such a requirement into the remainder of the statute.

ARC's remaining argument is based on the legal rule that acts of an independent contractor are not imputed to the principle. While this may be true, it is also irrelevant.[27] WCC and Silvertide can call Velocity whatever they want, but the fact is that Velocity (or another independent agent) sent the faxes on behalf of WCC, Silvertide, and perhaps, ARC. Accordingly, ARC has not demonstrated that it is entitled to judgment as a matter of law.

---

[26] ARC points out that courts have only discussed this issue in dicta.

[27] *See, e.g., Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878 (Md. Ct. Spec. App. 2001) (holding that the existence of an independent contractor relationship "would not, in itself" insulate the entity "on whose behalf" such solicitations are made); *Hooters of Augusta, Inc. v. Nicholson*, 537 S.E.2d 468, 472 (Ga. Ct. App. 2000) (concluding that "an advertiser may not avoid liability under the TCPA solely on the basis that the transmission was executed by an independent contractor").

### 2. Individual Defendants

Williams, Repede, and Paganelli, (collectively, the "Individual Defendants"), argue that they cannot be held personally liable under the TCPA absent some reason to "pierce the corporate veil." First, when viewed in a light most favorable to the Plaintiff, the Court finds that there is sufficient evidence to suggest that WCC, Silvertide, and ARC were "senders" under the TCPA for the purposes of summary judgment. Under New Jersey law, a corporate officer may be liable for the violation of a consumer protection statute if "the specific individual had engaged in conduct prohibited" by the statute. *Allen v. V and A Bros., Inc.*, 26 A.3d 430 (N.J. 2011). Similarly, under Maryland law, corporate officers may be personally liable for violations of the TCPA when they "direct, participate in, or cooperate in the prohibited conduct." *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 845-46 (Md. Ct. Spec. App. 2006). Accordingly, under both Maryland and New Jersey law, if a corporate officer personally engages in prohibited conduct, he or she can be personally liable under the TCPA. Some act or omission is required, Defendants cannot be liable solely by virtue of their titles, but "officers of a corporation may be individually liable for wrongdoing that is based on their decisions." *Mary CLE*, 890 A.2d at 845-46 (quoting *T-Up, Inc. v. Consumer Prot. Div.,* 801 A.2d 173 (Md. Ct. Spec. App. 2002)); *see also Allen*, 26 A.3d 430.

Williams and Paganelli assert that they had no knowledge of the offending faxes. However, during the time period in question, Williams, Repede, and Paganelli were high level officers in their respective companies. In fact, Williams was the only officer in WCC for some time. (Doc. 119, Ex. 1, 29:22-25). Silvertide was a similarly small company, run by Repede, his brother, and Williams. (Doc. 119, Ex. 1, 94:14-16). Paganelli was the president of ARC, which only had seven or eight

employees, and only two or three officers. (Doc. 118-1, 32:9-12).[28]  Further, Plaintiffs have provided

evidence that each Defendant received a citation from the FCC for similar violations in the years prior

to events in this case.  Based on this evidence, a reasonable jury could find that Williams, Repede, and

Paganelli personally participated in the solicitation of the vacation packages.  The Individual

Defendants have not established that they are entitled to judgment as a matter of law.

### C. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that there is sufficient evidence to hold all of the Defendants liable as a matter

of law. As to ARC, Plaintiff must establish that it was a "sender" under the TCPA.  Viewed in a light

most favorable to ARC, Plaintiffs have demonstrated the following: ARC had a close business

relationship with Silvertide and WCC, both of whom were "senders" under the TCPA; ARC

"fulfilled" the vacation packages "bundled" by WCC and Silvertide and sold by an "independent

agent"; ARC profited from the solicitations by selling "upgrades" to customers who contacted them;

ARC remitted payment to WCC or Silvertide.  This alone is not enough to justify summary judgment.

Based on this evidence, a reasonable jury could find that ARC was an independent company offering

an incidental service to the one advertised.

With respect to the Individual Defendants, Plaintiffs argue they are liable by virtue of their

respective positions as officers.  Under Maryland and New Jersey Law, Plaintiff must show that

Defendants actually participated in the alleged violation.  *Mary CLE*, 890 A.2d at 845-46; *Allen*, 26

A.3d 430.  Although Williams admits that WCC "entered into certain contracts," he never admits to

personally directing those business dealings.  Paganelli similarly denies any participation in the matter.

---

[28] Paganelli asserts that she was only the president for a certain period of time, and that there were other officers of ARC.  (Doc. 114, ¶¶ 55-56).

Mere "awareness" of an act is not sufficient for liability if the decision was made by another officer. Further, even though there is evidence which suggests the Williams, Repede and Paganelli may have been the only decision makers in their respective companies, that is not enough to justify judgment as a matter of law.

Plaintiffs also appear to argue that Defendants violated § 227(d) of the TCPA by failing to include opt-out notices on all of their advertisements. While this may be true, there is no private right of action for violation of the technical provisions in 47 U.S.C. § 227(d).  *Holmes v. Back Doctors, Ltd*., 695 F. Supp. 2d 843, 852 (S.D. Ill. 2010). *See generally, Touche Ross & Co. v. Redington*, 442 U.S. 560, 571-72 (1979) (noting that there is no right of action where Congress placed a right of action in some sections of a statute, but not the section under which the plaintiff sued).

In light of the foregoing, it is hereby **ORDERED** that,

1.     The Motion to Adopt (Doc. 120), filed by Defendants Don Williams and Jeff Repede is **GRANTED**;

2.     The Motion to Adopt (Doc. 124), filed by Plaintiff AGV Sports Group is **GRANTED**;

3.     The Motion for Summary Judgment (Doc. 123), filed by Plaintiffs Martin Pasco and Richard Zelma is **DENIED**;

4.     The Motion for Summary Judgment (Doc. 113), filed by Defendants Absolute Reservations Center and Kathleen Paganelli is **DENIED**; and

5.     The Supplemental Motion for Summary Judgment (Doc. 121), filed by Defendants Don Williams, Jeff Repede, and Kathleen Paganelli, is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 26, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE